# 25-520

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

THE EVERGREEN ASSOCIATION, INC.,
*Plaintiff-Appellant,*

v.

CITY OF NEW YORK.
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of New York, No. 20-CV-0580 (PKC) (PK)

## OPENING BRIEF OF APPELLANT

J. Matthew Belz
   *Counsel of Record*
Timothy Belz
CLAYTON PLAZA LAW GROUP, L.C.
Mary Catherine Martin
THOMAS MORE SOCIETY
112 South Hanley, Second Floor
St. Louis, Missouri 63105-3418
Phone: (314) 726-2800
Fax: (314) 863-3821

*Counsel for Appellant*

**Appellant Requests Oral Argument**

## CORPORATE DISCLOSURE STATEMENT

The Evergreen Association, Inc., is a nonprofit corporation in New York with no parent corporation and no stockholders.

*/s/ J. Matthew Belz*
J. Matthew Belz
*Counsel for The Evergreen*
*Association, Inc.*

Dated: May 12, 2025

# TABLE OF CONTENTS

Corporate Disclosure Statement ........................................................... i

Table of Authorities ........................................................................ v

Preliminary Statement .................................................................... 1

Statement of Jurisdiction ................................................................. 6

Statement of the Issues Presented for Review ....................................... 7

Statement of the Case .................................................................... 9

    Nature of the Dispute ............................................................... 9

    The Evergreen Association, Inc., Christopher Slattery and
    Rev. Jim Harden ................................................................... 10

    New York City's Introduction 863-A/Local Law No. 20 of 2019 ................ 13

    Procedural history ................................................................. 16

Summary of the Argument ............................................................... 18

Argument ................................................................................... 20

    Standard of Review ................................................................ 20

I.    Evergreen has standing to maintain its expressive association claim
    because it demonstrated that it intends to continue ensuring that its
    employees live consistently with Evergreen's position on abortion ....... 20

    A. Evergreen demonstrated "an intention to engage in a course of
    conduct arguably affected with a constitutional interest, but
    proscribed by [Local Law 20]," and, in fact, is already in violation
    of the law. ........................................................................ 21

    1.  The evidence is clear that Evergreen does make and intends to
    make employment decisions based on employees' reproductive

health decisions. .......................................................... 21

2. Evergreen has standing because it is the object or target of
Local Law 20. .......................................................... 24

3. The district court's finding that Evergreen cares only about an
employee's beliefs, not actions, demonstrates a fundamental
misunderstanding of Evergreen and exceeds the Court's
constitutional role in Evergreen's expressive association. ........... 25

4. Evergreen's screening of its employees for pro-life commitment,
a factor the district court relied upon in finding that Evergreen is
unlikely to violate Local Law 20, is itself a violation of
Local Law 20. .......................................................... 28

B. There is a credible threat of enforcement. ......................... 30

1. There is a presumption that the government intends to enforce
its legislation, and it is the government's burden to defeat that
presumption. .......................................................... 30

2. The City has not disavowed enforcement of Local Law 20, but
has instead fought tooth and nail to protect the statute. ............ 31

3. Evergreen is in a limited category of employers targeted by
Local Law 20 *and* targeted by the City. ......................... 32

4. Local Law 20's private right of action also provides a credible
threat of enforcement. ............................................... 33

5. The district court turned this Court's threat-of-enforcement
analysis on its head. ................................................. 34

II. Evergreen has standing to maintain its free speech claim because
Local Law 20 bars speech in which Evergreen already engages. ............. 36

III. Evergreen should be granted summary judgment against enforcement
of Local Law 20, because it interferes with Evergreen's right to
organize its staff and to speak freely to employees and job
applicants about abortion. .......................................... 38

A. Legal Standards ..................................................... 38

    1. Decision on Appeal ........................................... 38

    2. Summary Judgment ......................................... 38

    3. Permanent Injunction ....................................... 39

B. Evergreen is entitled to summary judgment on its expressive association claim. ................................................... 39

    1. Evergreen engages in expressive activity. ....................... 40

    2. Local Law 20 significantly impairs Evergreen's expressive association. ................................................... 40

    3. Local Law 20 fails strict scrutiny. ............................. 43

        a. The City can show no compelling interest. ................. 44

        b. Local Law 20 is not narrowly tailored. ..................... 47

C. Evergreen is entitled to summary judgment on its free speech claim. ..................................................... 48

D. Evergreen satisfies the remaining permanent injunction factors ........ 54

Conclusion ..................................................... 54

Certificate of Compliance ..................................................... 56

Certificate of Service ..................................................... 56

iv

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*303 Creative LLC v. Elenis*,
   6 F.4th 1160 (10th Cir. 2021) .................................................................23

*303 Creative LLC v. Elenis*,
   600 U.S. 570 (2023) .....................................................................33, 45

*ACLU v. Ashcroft*,
   322 F.3d 240 (3d Cir. 2003) .................................................................54

*Antonyuk v. James*,
   120 F.4th 941 (2d Cir. 2024) ................................................4, 30, 34, 35

*Arizona Life Coal. Inc. v. Stanton*,
   515 F.3d 956 (9th Cir. 2008) .................................................................52

*Babbitt v. United Farm Workers National Union*,
   442 U.S. 289 (1979) ........................................................... Passim

*Bailey v. New York State Div. of Hum. Rts.*,
   959 N.Y.S.2d 833 (Sup. Ct. 2012) .......................................................52

*Bey v. City of New York*,
   999 F.3d 157 (2d Cir. 2021) .................................................................20

*Boy Scouts of Am. v. Dale*,
   530 U.S. 640 (2000) ........................................................39, 40, 42, 45

*Brooklyn Branch of Nat'l Ass'n for Advancement of Colored People v. Kosinski*,
   657 F. Supp. 3d 504 (S.D.N.Y. 2023) ..................................................34

*Brown v. Kemp*,
   86 F.4th 745 (7th Cir. 2023) .................................................................34

*Burson v. Freeman*,
   504 U.S. 191 (1992) .............................................................................44

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ...............................................................15, 16, 47

*Cerame v. Slack*,
123 F.4th 72 (2d Cir. 2024) .....................................................5, 33, 34

*Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago*,
93 F.3d 1064 (2d Cir. 1996) ...............................................................38

*Christian Legal Soc'y v. Walker*,
453 F.3d 853 (7th Cir. 2006) .........................................................3, 47

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ...........................................................................44

*City of Boerne v. Flores*,
521 U.S. 507 (1997) ...........................................................................43

*Conn. Dep't of Env't Prot. v. O.S.H.A.*,
356 F.3d 226 (2d Cir. 2004) ...............................................................39

*Democratic Party of United States v. Wisconsin ex rel. La Follette*,
450 U.S. 107 (1981) ...........................................................................40

*Doster v. Kendall*,
54 F.4th 398 (6th Cir. 2022) ...............................................................23

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ...........................................................................39

*Elrod v. Burns*,
427 U.S. 347 (1976) ...........................................................................54

*Epperson v. Arkansas*,
393 U.S. 97 (1968) .............................................................................23

*Evergreen Ass'n, Inc. v. City of New York*,
740 F.3d 233 (2d Cir. 2014) .........................................................5, 33

*Frisby v. Schultz,*
    487 U.S. 474 (1988) ........................................................................47

*Fulton v. City of Philadelphia,*
    141 S. Ct. 1868 (2021) ........................................................44, 45, 46

*Gonzales v. O Centro Espirita Beneficente Uniaodo Vegetal,*
    546 U.S. 418 (2006) ................................................................44, 46

*Gratz v. Bollinger,*
    539 U.S. 244 (2003) ........................................................................24

*Hedges v. Obama,*
    724 F.3d 170 (2d Cir. 2013) ....................................................... Passim

*Hobbs v. County of Westchester,*
    397 F.3d 133 (2d Cir. 2005) ..........................................................51

*Holder v. Humanitarian L. Project,*
    561 U.S. 1 (2010) ..........................................................................31

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
    565 U.S. 171 (2012) ......................................................................32

*Hulinsky v. Cnty. of Westchester,*
    2025 WL 835646 (S.D.N.Y. Mar. 14, 2025)....................................35

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
    515 U.S. 557 (1995) ......................................................................42

*Isaacson v. Mayes,*
    84 F.4th 1089 (9th Cir. 2023) ........................................................34

*King v. Commissioner,*
    458 F.2d 245 (6th Cir.1972) ..........................................................38

*Krause v. Lancer & Loader Grp., LLC,*
    965 N.Y.S.2d 312 (Sup. Ct. 2013) ................................................52

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................24

*Melman v. Montefiore Med. Ctr.*,
    98 A.D.3d 107, 946 N.Y.S.2d 27 (2012)............................................28

*Nat'l Org. for Marriage, Inc. v. Walsh*,
    714 F.3d 682 (2d Cir. 2013) ..................................................... Passim

*Nev. Dep't of Human Res. v. Hibbs*,
    538 U.S. 721 (2003) ......................................................................14

*New Hope Fam. Servs., Inc. v. Poole*,
    966 F.3d 145 (2d Cir. 2020) ............................................................42

*Our Lady's Inn v. City of St. Louis*,
    349 F. Supp. 3d 805 (E.D. Mo. 2018) ..........................................43, 45

*Picard v. Magliano*,
    42 F.4th 89 (2d Cir. 2022) ..............................................................37

*Pustilnik v. Battery Park City Auth.*,
    71 Misc. 3d 1058, 147 N.Y.S.3d 357 (N.Y. Sup. Ct. 2021)................28

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015) ......................................................................51

*Ridley v. Massachusetts Bay Transp. Auth.*,
    390 F.3d 65 (1st Cir. 2004) .............................................................53

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) ..........................................................39, 42, 43

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) ......................................................................52

*Slattery v. Cuomo*,
    531 F. Supp. 3d 547 (N.D.N.Y. 2021) .............................................40

*Slattery v. Hochul*,
   61 F.4th 278 (2d Cir. 2023) ........................................................ Passim

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ......................................................................53

*State v. E.E.O.C.*,
   129 F.4th 452 (8th Cir. 2025) ......................................................24

*Statharos v. N.Y. City Taxi & Limousine Comm'n*,
   198 F.3d 317 (2d Cir. 1999) ........................................................54

*Stetson v. Howard D. Wolf & Assocs.*,
   955 F.2d 847 (2d Cir.1992) ..........................................................38

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ...............................................20, 23, 31, 33

*Telescope Media Grp. v. Lucero*,
   936 F.3d 740 (8th Cir. 2019) ......................................................23

*Tingley v. Ferguson*,
   47 F.4th 1055 (9th Cir. 2022) ......................................................34

*Turner Broad. Sys., Inc. v. F.C.C.*,
   512 U.S. 622 (1994) ...............................................................44, 45

*United States v. Playboy Entm't Grp., Inc.*,
   529 U.S. 803 (2000) .........................................................44, 45, 47

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977) ......................................................................53

*Vitagliano v. County of Westchester*,
   71 F.4th 130 (2d Cir. 2023) ...................................................23, 35

**Statutes**

26 U.S.C. 501 ....................................................................................11

28 U.S.C. 1291 ....................................................................................6

28 U.S.C. 1331 ....................................................................................6

28 U.S.C. 1343 ....................................................................................6

28 U.S.C. 2201 ....................................................................................6

28 U.S.C. 2202 ....................................................................................6

29 U.S.C. 2612 ..................................................................................14

42 U.S.C. 1983 ....................................................................................6

42 U.S.C. 1988 ....................................................................................6

42 U.S.C. 2000e ................................................................................14

**Rules**

Fed. R. App. P. 4 ................................................................................6

Fed. R. App. P. 32 ............................................................................56

Fed. R. Civ. P. 56 ............................................................................38

**New York Constitutional Provisions and Regulations**

Admin. Code § 8–101 ......................................................................13

Admin. Code § 8–107 ..........................................................14, 15, 16

Admin. Code § 8–126 ......................................................................14

Admin. Code § 8–502 ........................................................................14

N.Y. Const. art. I, § 11(a)..............................................................32

## PRELIMINARY STATEMENT

In early 2019, New York City ("the City") passed Local Law No. 20 of 2019 ("Local Law 20"). In so doing, the City trampled the constitutional rights of the Evergreen Association, Inc. ("Evergreen"), and other religious and pro-life employers in order to promote abortion.

Evergreen employs five to seven people who, together with volunteers, are the face, arms, hands, feet, and heart of Evergreen's pro-life message. Everything Evergreen does—from counseling pregnant women, to providing women with nursing services and sonograms, to communicating expectations to its employees—aims at bringing about an abortion-free culture. This mission of conversion of culture requires Evergreen to hire and retain only employees who genuinely support its mission, personally and professionally.

Local Law 20 provides that it shall be unlawful for "an employer or an employee or agent thereof, because of the actual or perceived . . . sexual and reproductive health decisions . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." The legislative history shows that lawmakers aimed at counteracting the (judicially vindicated) efforts of religious employers throughout the country to avoid unlawful coercion under the federal Affordable Care Act's contraceptive mandate.

Local Law 20 compels Evergreen to hire and/or retain people to represent it without regard to whether they have abortions or use abortifacient drugs, which are the very decisions Evergreen exists to eliminate. If Evergreen should inquire whether an applicant leads a life consistent with its core mission, it faces a threat of costly litigation and criminal sanctions should she not be hired. Similarly, if it should become known that an employee counselor has had an abortion, Evergreen could not prevent such a person from advising clients.

Absent relief, Evergreen can no longer make hiring decisions consistent with its religious, expressive mission without exposing itself to lethal monetary penalties (up to $250,000) and civil and criminal liability. This was acknowledged in an earlier appellate decision, *Slattery v. Hochul,* 61 F.4th 278 (2d Cir. 2023), in a challenge by Evergreen to a similar statewide anti-discrimination law. The Court held that the State's "Boss Bill" "severely burdens Evergreen's First Amendment right to freedom of expressive association" because it "forces Evergreen to employ individuals who act or have acted against the very mission of its organization." *Id.* at 288.

Local Law 20 and the State's "Boss Bill" (addressed in a tandem appeal, case no. 25-422) seem to share the same goals, but they differ in important ways. Local Law 20, unlike the state law, includes an explicit regulation of speech that disallows any statement "which expresses, directly or indirectly, any limitation,

2

specification or discrimination . . . as to reproductive health decisions . . . or any intent to make any such limitation, specification or discrimination." Evergreen's job listings, written employee statement of faith, and job interviews *all*, at the very least "*indirectly*," express a preference for employees who adhere to Evergreen's pro-life mission in word and deed. It is unclear if this speech issue had any effect on the district court's standing analysis, but the court showed clear misunderstanding of the issue by noting that if the court did reach the merits, it would rule in the City's favor on the free speech claim "pursuant to *Slattery v. Hochul*, 61 F.4th at 292-94." Again, the State law under consideration there has no speech code.

This Court's opinion in *Slattery v. Hochul* makes clear that Local Law 20, because it requires pro-life expressive associations such as Evergreen to hire or retain employees who take actions diametrically opposed to the association's mission, is invalid under the First Amendment. *Id*. at 290 (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 863 (7th Cir. 2006) ("It would be difficult for [the plaintiff] to sincerely and effectively convey a message of disapproval of certain types of conduct if, at the same time, it must accept members who engage in that conduct.")).

Nevertheless, the district court granted summary judgment against Evergreen, essentially stating that it has to wait until it is prosecuted by the State or

sued by a private party before it can challenge Local Law 20. The court found that because Evergreen has never fired an employee for having an abortion, and because it has sometimes hired those who have had abortions, it is too speculative that Evergreen will actually violate the law.

The district court erred in important ways. Fundamentally, the district court misunderstands Evergreen. The district court said that Evergreen cares not about its employees' reproductive health decisions, but about its employees' *beliefs* about abortion. Joint Appendix ("JA") 38.[1] This finding is contradicted by the record, and it is also discourteous to Evergreen; if Evergreen does not care about its employees *actually having abortions*, it should not exist. Its mission of preventing abortion (JA 561-62) would be hollow. Nothing in the record shows such hypocrisy.

The district court's finding regarding a lack of credible threat of enforcement of Local Law 20 turns this Court's rulings on their head. *See, e.g.*, *Antonyuk v. James*, 120 F.4th 941, 1005-06 (2d Cir. 2024) (the Court "presume[s] such intent [to enforce the law] in the absence of a disavowal by the government or another reason to conclude that no such intent existed"). There has been no such disavowal; indeed, the City has fought tirelessly to keep its law viable, arguing that

---

[1] The Joint Appendix has five volumes. Pages labeled JA 1-248 are in Volume 1, JA 249-547 in Volume 2, JA 548-818 in Volume 3, JA 819-1058 in Volume 4 and JA 1059-1270 in Volume 5.

4

the government has a compelling interest in enforcing it even against a small organization that exists to prevent abortion.

Evergreen is in the crosshairs of the City. The City's "Abortion Access Hub" refers to crisis pregnancy centers like those operated by Evergreen as "fake clinics" and advises the public about how to report them to authorities.[2] The City also has a history of unconstitutional attempts to regulate crisis pregnancy centers. *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 249-250 (2d Cir. 2014) (finding that mandatory disclosures for crisis pregnancy centers in the City violate the centers' free speech rights and could not survive strict scrutiny).

Evergreen's fears of enforcement are thus not "imaginary or wholly speculative." *Cerame v. Slack*, 123 F.4th 72, 82 (2d Cir. 2024) (quoting *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 302 (1979)).

The district court's decision abandons Evergreen as a lamb to the slaughter, while pre-enforcement relief would protect Evergreen and give guidance to the City about its duties and limitations regarding Local Law 20. It benefits no one to postpone imposing on the Government the constitutional limits that this Court has already delineated.

---

[2] "The New York City Abortion Access Hub,"
https://www.nyc.gov/assets/doh/downloads/pdf/ms/abortion-hub-info.pdf

## STATEMENT OF JURISDICTION

Plaintiff The Evergreen Association, Inc. ("Evergreen"), brought suit in the United States District Court for the Eastern District of New York under 42 U.S.C. 1983 to vindicate its rights under the United States Constitution. The district court exercised federal question jurisdiction under 28 U.S.C. 1331. Authority to grant the requested injunctive relief is provided under 28 U.S.C. 1343; authority to grant the requested declaratory relief is provided under 28 U.S.C. 2201 and 2202; and authority to award costs and attorney fees is provided under 42 U.S.C. 1988.

The parties filed cross-motions for summary judgment. The district court entered final judgment granting the City's motion and denying Evergreen's motion on February 7, 2025.

Evergreen timely filed its notice of appeal on March 5, 2025, within the time limit allowed by Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure.

This Court has appellate jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

This appeal raises four issues:

I.   Whether Evergreen has standing to maintain its claim pursuant to the
     First Amendment for violation of Evergreen's right to freedom of
     association by demonstrating that, because Evergreen clearly intends to
     ensure that its prospective and current employees abide by and live
     consistently with Evergreen's position on abortion, it has an intention to
     engage in a course of conduct arguably affected with a constitutional
     interest, but proscribed by a statute, and there exists a credible threat of
     prosecution thereunder.[3]

II.  Whether Evergreen has standing to maintain its claim pursuant to the
     First Amendment for violation of Evergreen's right to free speech by
     demonstrating that, among other things, the challenged legislation
     restricts Evergreen from expressing preferences and limitations, such as
     in job listings, interviews and a code of conduct, regarding having
     employees that abide by Evergreen's moral code relating to abortion.

---

[3] The district court ruled that Evergreen did not have standing, and then, for the
same reasons, found that the case was not ripe: "As here, courts often conclude that
standing and constitutional ripeness rise and fall together." JA 45. Given that the
issues "rise and fall together," Evergreen addresses standing herein but does not
separately address ripeness. *See also Nat'l Org. for Marriage, Inc. v. Walsh,* 714
F.3d 682, 688 (2d Cir. 2013) ("[T]he best way to think of constitutional ripeness is
as a specific application of the actual injury aspect of Article III standing.").

III.    Whether Evergreen, with standing to maintain its expressive association claim, should be granted summary judgment against enforcement of the challenged legislation because it denies Evergreen its rights as an expressive association to organize its staff and to correct, discipline or terminate staff who reject Evergreen's moral and religious position on abortion.

IV.    Whether Evergreen, with standing to maintain its free speech claim, should be granted summary judgment against enforcement of the challenged legislation because it denies Evergreen its right to express preferences to select and retain employees who support Evergreen's mission in word and deed.[4]

---

[4] Evergreen is not appealing the summary judgment ruling on its Free Exercise claim.

## STATEMENT OF THE CASE

**Nature of the Dispute**

Plaintiff The Evergreen Association, Inc. ("Evergreen"), is a New York nonprofit corporation doing business as Expectant Mother Care and EMC Frontline Pregnancy Centers. Evergreen's former president and founder, Christopher T. Slattery, was originally a plaintiff before he suffered a terminal illness that led to his replacement as president by the Reverend Jim Harden.

Plaintiff Evergreen operates pregnancy crisis centers throughout New York City with the morally and religiously motivated mission of saving children from abortion and providing alternatives to abortion, including support for mothers who decide to raise their children themselves.

Evergreen seeks judicial review of a law adopted by the City of New York, Local Law No. 20 of 2019 ("Local Law 20"), which creates a protected class based on "reproductive health decisions" and forbids employers from making any employment-related decisions or statements based on the "reproductive health decisions" of employees or job applicants, including their involvement in abortion.

Evergreen's employment policy—a policy shared by numerous other pro-life organizations—is that persons who wish to be hired or remain employed by Evergreen must not obtain, assist in obtaining, or condone abortion. As such, Evergreen hires and retains only employees who adhere to the mission and policy

9

of opposition to abortion. According to the challenged law, Evergreen's employment policy and screening would constitute unlawful employment discrimination, and Evergreen would be required to hire or retain personnel who have abortions—the very act Evergreen exists to prevent. Evergreen's job listings, written staff statement of faith and abortion-related questions in job interviews are now illegal.

The challenged law thus directly interferes with the mission of Evergreen by forbidding it from making employment decisions or even asking questions based on reproductive health decisions of employees, including the decision to have an abortion. In addition to crippling damages and attorney fee awards imposed by the law in the case of a violation, the statute creates a private right of action. Evergreen could also be forced to reinstate an employee fired for having an abortion.

For those reasons, the challenged law is an existential threat to Evergreen. Evergreen therefore seeks a declaration that Local Law 20 is unconstitutional and void as applied to Evergreen, as well as an injunction against enforcement of the law against Evergreen.

### The Evergreen Association, Inc., Christopher Slattery and Rev. Jim Harden

Christopher T. Slattery, a New York resident, was the founder and President of The Evergreen Association, Inc., which does business as Expectant Mother Care and EMC FrontLine Pregnancy Centers ("Evergreen"). JA 560.

10

Evergreen is a nonprofit organization that has operated continuously since October of 1985 exclusively for charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. *Id*. Evergreen has multiple locations in New York City. *Id*. Evergreen generally has between five and seven employees. *Id*.

Evergreen operates crisis pregnancy centers that serve primarily poor, low-income, and working pregnant women in distressed conditions, many of whom are contemplating abortion. JA 561. Evergreen provides women with counseling, education, and nursing care from only life-affirming and abstinence-promoting perspectives. *Id*. Evergreen strives to provide the compassion, concern, and support necessary to enable women to carry their unborn children to term. *Id*.

Mr. Slattery set all policies governing the conduct of Evergreen's operations, guided by the principles of his faith. *Id*. Mr. Slattery was a sincere practitioner of the Catholic religion, which forbids performing, aiding, assisting or condoning abortion or infanticide under any circumstances, condemning these acts as intrinsic evils and "unspeakable crimes." *Id*.; Vatican Council II, *Gaudium et Spes*, 51.

As a pro-life agency, Evergreen openly opposes the procurement, promotion or facilitation of abortion by its clients or its personnel. JA 562.

In order to further its mission, Evergreen vets and hires only employees, interns or volunteers ("personnel") who oppose abortions. JA 562. Evergreen specifically asks prospective employees if they are pro-choice or pro-life, and pro-

11

choice candidates are not considered for employment. *Id*. Evergreen advertises its personnel positions (including nurses, counselors and technicians) publicly and specifically states that is seeking only pro-life candidates and those with a "pro-life commitment." JA 563, 1215. Evergreen will not hire or retain personnel who refuse to act in accord with Evergreen's religiously motivated mission and employment policy. JA 1216. Employees are expected to communicate Evergreen's pro-life message in public and private word and deed. JA 563.

Evergreen requires that its employees sign a document called an "EMC Staff Statement of Position, Faith & Principle" (hereafter "Staff Statement"). JA 1216, 1252-55. This document requires, among other things, that employees "uphold" Evergreen's position on abortion, only participate in monogamous marriages, remain abstinent if unmarried, and "present[] the gospel . . . in word and in deed." *Id*. The document was developed to ensure that employees hold to the standards that Evergreen espouses. *Id*.

Mr. Slattery, originally a co-plaintiff, died on November 22, 2023. JA 1214. Rev. Jim Harden replaced Mr. Slattery as president of Evergreen. *Id*. Rev. Harden is carrying on business as usual at Evergreen with the same principles regarding employment decisions (as they relate to this case). JA 1215. Rev. Harden sat for a deposition on January 24, 2024, in the related Northern District case, *Slattery v.*

*Hochul*, 1:20-cv-0112 (AMN/DJS), and that deposition was used as evidence by both parties in this case. JA 1055, 1215.

**New York City's Introduction 863-A/Local Law No. 20 of 2019**

Title 8 of the City's Administrative Code addresses civil rights in the City and creates a Commission on Human Rights ("the Commission") "with power to eliminate and prevent discrimination from playing any role in actions relating to employment," *inter alia*. Admin. Code § 8–101.

Local Law 20, which became effective on May 20, 2019, added "sexual and reproductive health decisions" to the protected characteristics listed in Sections 8-101 and 8-107(1), such that the relevant parts of section 8-107(1) now read:

1. Employment. It shall be an unlawful discriminatory practice:

(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, <u>sexual and reproductive health decisions</u>, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.
...
(d) For any employer, labor organization or employment agency or an employee or agent thereof to declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination as to age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, <u>sexual and reproductive health decisions</u>, sexual

13

orientation or alienage or citizenship status, or any intent to make any such limitation, specification or discrimination.

Admin. Code § 8–107(1) (emphases added).

The term "sexual and reproductive health decisions" is defined as:

any decision by an individual to receive services, which are arranged for or offered or provided to individuals relating to sexual and reproductive health, including the reproductive system and its functions. Such services include, but are not limited to, fertility-related medical procedures, sexually transmitted disease prevention, testing, and treatment, and family planning services and counseling, such as birth control drugs and supplies, emergency contraception, sterilization procedures, pregnancy testing, and abortion.

Local Law 20(2).[5]

Where the Commission finds that a person has engaged in an unlawful discriminatory practice, it may impose a civil penalty of up to $250,000. Admin. Code § 8–126. The City's law also provides for a private cause of action. Admin. Code § 8–502.

At a City Council hearing on November 19, 2018, the Deputy Commissioner of Policy and Intergovernmental Affairs for the City's Commission on Human Rights was directly asked multiple times for historical examples of discrimination that would be addressed by proposed Local Law 20, and she offered only

---

[5] This law is different from pregnancy discrimination laws, many of which are already in effect in New York City. *See* Local Law No. 78 (2013); N.Y.C. Admin. Code § 8-107(22); 42 U.S.C. 2000e(k); 29 U.S.C. 2612(a)(1)(A); *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 736 (2003).

hypotheticals. JA 563.[6] The Director of Government Relations for Planned Parenthood of Greater New York also testified in favor of the bill, and similarly admitted she did not "actually have any specific case examples . . ." of discrimination the bill would address. JA 564. Indeed, the only examples of supposed discrimination the City Council cited at any point were 15 or more years old and came out of religious schools, which are not covered by Local Law 20.[7] *Id*. The City acknowledges that there have been no complaints under the law since its passage. JA 565.

As for the true rationale for the bill, the Deputy Commissioner alluded to the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014): "There's been some Supreme Court decisions that have given, you know, even privately held corporations the right to exclude certain kinds of care in their

---

[6] Citing November 19, 2018 Hearing Transcript at 22 ("In the housing context I could imagine in the context of shelter if there are shelters that, you know, privately funded or, you know, that receive private money might not want to allow someone to say if they disagree with certain decisions."), 19 ("[T]he example I'll provide is not one that I've seen at a commission, but were [sic] thinking about the context in which someone might seek medical treatment from a provider, and the provider looks at one's medical history and sees that they had had an abortion for example, and the medical provider then determines that they are—they do not wish to—to take that person on as a patient.").

[7] Councilperson Jumaane Williams cited women fired in 2005 and 2006 from a school in New York (for pregnancy outside of marriage) and one *in Wisconsin* (for in vitro fertilization). JA 564. Local Law 20 does not appear to address these cases, as most religious schools would be exempt under Administrative Code § 8–107(12).

insurance policies." JA 564. Councilperson Ben Kallos was more explicit, referring to the *Hobby Lobby* decision as one that would "live in infamy," and characterizing Local Law 20 as aimed at "tell[ing] employers that they can no longer force their religious views onto the—the women—and families" of New York City. JA 565.

Tacitly acknowledging the First Amendment problems of Local Law 20, the City's Administrative Code exempts an ambiguously defined category of "religious organizations" from its requirements. Administrative Code § 8–107(12).[8] However, although its mission and employment policy are moral and religious, Evergreen is apparently not a "religious organization" within the meaning of that exemption. JA 569.

**Procedural history**

Evergreen filed this case on January 31, 2020. The parties completed discovery and exchanged cross-motions for summary judgment on August 13, 2021. *See* Record, ECF 26-27.

On September 30, 2022, the district court stayed the case pending resolution of *Slattery v. Cuomo*, No. 21−911 (2d Cir.). This Court issued its opinion in that

---

[8] A "religious organization" is "any religious or denominational institution or organization or any organization operated for charitable or educational purposes, which is operated, supervised or controlled by or in connection with a religious organization . . ." Administrative Code § 8–107(12).

case (*Slattery v. Hochul,* 61 F.4th 278 (2d Cir. 2023)) on February 27, 2023, and the parties filed supplemental briefing on May 24, 2023. *See* Record, ECF 50-51.

In May of 2024, the parties exchanged an additional round of supplemental briefing on their cross-motions for summary judgment. *See* Record, ECF 63-66.

On February 7, 2025, judgment was entered in favor of the City. JA 46. Evergreen timely filed its notice of appeal on March 5, 2025. JA 12.

# SUMMARY OF THE ARGUMENT

The district court, in ruling that Evergreen did not have standing to maintain its First Amendment claims, construed virtually every fact against Evergreen and gave the benefit of the doubt to the State at every step. A pre-enforcement case's "somewhat relaxed standing and ripeness rules" with a "low threshold" and a "quite forgiving" standard were turned upside down. *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013); *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013).

Evergreen has clearly demonstrated its intent to violate Local Law 20 in that it has a stated intention, consistent with its clear mission, to terminate employees who act contrary to Evergreen's pro-life worldview. Moreover, Evergreen is actively violating Local Law 20's express speech restrictions in its job listings, its Staff Statement requirement, and its screening practices.

The district court applied a government-friendly credible-threat-of-enforcement analysis that completely ignored Evergreen's current violations of the law's speech restrictions. This was reversible error.

The longstanding law of this Court is that it is presumed that laws will be enforced unless there is a disavowal or the law is moribund. The burden is on *the Government* to show that there is no credible threat of enforcement. *Hedges*, 724 F.3d at 196-97. There is no disavowal in this case by the City; instead, it has

argued since the law passed that enforcement of Local Law 20 against Evergreen and similarly situated entities is of vital, compelling interest. Nor is the law moribund: the City cites its importance, and, in any case, it is only five years old.

Nevertheless, the district court concluded that Evergreen is unlikely to employ someone who has an abortion because it "carefully screens and selects its employees" (JA 36). But Local Law 20 makes those screening practices (asking about experiences with abortion, job listings that require a pro-life commitment, requiring written statements from employees promising to uphold Evergreen's standards on abortion) illegal.

The district court did not apply any "low threshold" or "forgiving" standards in its standing analysis. It required Evergreen to *prove* that it will be prosecuted. This is not the law.

This Court should not hesitate to reverse the district court's erroneous conclusion as to Evergreen's standing. It should then enter summary judgment applying this Court's own holding in *Slattery v. Hochul,* 61 F.4th 278, 288 (2d Cir. 2023), to the effect that Local Law 20 "severely burdens Evergreen's First Amendment right to freedom of expressive association" because it "forces Evergreen to employ individuals who act or have acted against the very mission of its organization." The Court should also find that Evergreen's free speech rights are violated.

19

## ARGUMENT

### Standard of Review

This Court reviews "de novo a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor." *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021).

\* \* \*

**I.** **Evergreen has standing to maintain its expressive association claim because it demonstrated that it intends to continue ensuring that its employees live consistently with Evergreen's position on abortion.**

In this "pre-enforcement" First Amendment claim, Evergreen is subject to "somewhat relaxed standing and ripeness rules." *Walsh*, 714 F.3d at 689. The injury-in-fact standing requirement is satisfied when a plaintiff "alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The *Babbitt* standard "sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review," as courts are generally "willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Hedges*, 724 F.3d at 196.

In other words, "a plaintiff has standing to make a preenforcement challenge 'when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative.'" *Id*. (quoting *Babbitt*, 442 U.S. at 302).

**A.     Evergreen demonstrated "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [Local Law 20]," and, in fact, is already in violation of the law.**

**1.   The evidence is clear that Evergreen does make and intends to make employment decisions based on employees' reproductive health decisions.**

Evergreen has stated that it will continue to make employment decisions in line with its religious and moral beliefs and to protect its associational rights:

> We intend to take adverse employment action against employees who choose to procure abortions, advocate for abortion . . . or otherwise violate Evergreen's organizational policies regarding abortion and sexual morality.

JA 568; *see Babbitt*, 442 U.S. at 298 (credible threat of enforcement when plaintiff has "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute"). Rev. Harden confirmed in his deposition taken by the Attorney General's office:

> Q.  When you say [you ask applicants about their] experience with abortion, what does that mean in the question that's asked of applicants?
> A.  Well, we're just trying to, you know, create a dialogue, trying to figure out, in -- in many ways what's -- if -- if this person is pro-life and -- and we want to know what their experience with abortion, because it – it's, in some ways, important for us to know if -- if their pro-life convictions extend to, you know, other behavior.
>    ...
> Q.  [H]ow would their answers to the questions . . . affect the hiring process?

21

A. Well, if -- if -- if they participated in abortion, for example, in some form or fashion, and would do it again, that would preclude us from hiring them.

JA 1085-88.[9] Harden continued: "We're asking about beliefs . . . and behaviors."

JA 1240. Evergreen's job listings require a "pro-life commitment," JA 1242, which

is clearly incompatible with the act of having an abortion.

The Second Circuit focused on these practices in its previous decision:

Evergreen represents that it intends to continue these hiring practices. It plans to state in employment advertisements that "it is seeking only pro-life candidates" and will not hire or retain employees who violate its policies against procuring abortions or engaging in extramarital sexual relations.

*Slattery v. Hochul*, 61 F.4th at 284. These facts are still true. JA 563, 568; *see*

*Babbitt,* 442 U.S. at 298.

Contrary to the findings of the district court (JA 37), it does not affect

Evergreen's standing that it has had post-abortive employees in the past. As

Evergreen told the Second Circuit in its earlier, successful appeal in the State Boss

Bill case:

[T]here are many people who have had abortions in the past and, formed by that experience, have become committed, compelling advocates for Evergreen's message. This may be as or more common than an abortion decision presenting an obstacle to employment at Evergreen. That does not change the fact that in

_____

[9] The conversations about applicants' experiences with abortion undermine the district court's note that it is "unlikely" "that Evergreen actually learns of an employee's sexual or reproductive health decision." JA 39. Evergreen asks during the application process. Regarding current employees, there are obvious opportunities to discover an employee's abortion (like through physical appearance or gossip). Further, the City would not have had any reason to pass this law if it were unlikely that employers would learn of covered employee actions.

other, more straightforward situations (*e.g.*, choosing to have an abortion or seek an abortion for a family member while employed by Evergreen), an unrepentant decision to have or help procure an abortion may reveal an unbridgeable gap between an employee or potential employee and Evergreen's goal of bringing about an abortion-free culture. . . . [Evergreen] insists on what the Constitution promises and [the Boss Bill] purports to remove: Evergreen's rights as a religious believer, a communicator, and an expressive association to determine whether and when someone is a good representative of its mission.

*Slattery v. Hochul*, No. 21-911 (2d Cir.), Reply Brief at 2-3 (citations and

footnotes omitted).

Nor does it affect the standing analysis that Evergreen has never previously

fired someone for having an abortion. This Court is clear that the question is

intent:

That Vitagliano had not engaged in sidewalk counseling prior to the Act's passage does not require a different result. *See Susan B. Anthony List*, 573 U.S. at 159, 134 S.Ct. 2334 (requiring only an "intention to engage in a course of conduct" (internal quotation marks omitted)); *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1172 (10th Cir. 2021) (finding intent to engage in conduct where "[a]lthough Appellants have not yet offered wedding website services," they "provided clear examples of the types of websites they intend to provide"), *cert. granted on different question*, ––– U.S. ––––, 142 S. Ct. 1106, 212 L.Ed.2d 6 (2022); *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 750 (8th Cir. 2019) (finding standing where plaintiff planned to "enter" business that would be affected by challenged law).

*Vitagliano v. County of Westchester*, 71 F.4th 130, 138 (2d Cir. 2023); *see also*

*Doster v. Kendall*, 54 F.4th 398, 417 (6th Cir. 2022) ("The Supreme Court has long

held that parties may raise pre-enforcement challenges to a legal mandate before

engaging in the act that will trigger it."); *Epperson v. Arkansas*, 393 U.S. 97, 100-

02 (1968) (allowing a schoolteacher to challenge a law against teaching evolution

even though she apparently had never taught evolution before); *Gratz v. Bollinger*, 539 U.S. 244, 260-61 (2003) (allowing transfer student to challenge a school's race-based admissions policy even though he had never tried to transfer to the school).

### 2. Evergreen has standing because it is the object or target of Local Law 20.

As explained more fully below in the context of threatened enforcement, Evergreen has standing to challenge Local Law 20 because the law is aimed at regulating its employment decisions,[10] whether or not it has acted in the past in a way that would violate it. Where a plaintiff is the object of a regulatory action, "there is ordinarily little question that the action or inaction has caused [the plaintiff] injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 561-62 (1992); *see also State v. E.E.O.C.*, 129 F.4th 452, 457-58 (8th Cir. 2025) ("Because the States are the object of an agency action, they are injured by the imposition of new regulatory obligations.").

As established by the legislative history, it is unclear if any employer *anywhere* has *ever* fired an employee for having an abortion. This is because few employers have any reason to. Local Law 20 purports to apply to all employers,

---

[10] See *infra* at pp. 32-33.

but only crisis pregnancy centers (1) have mission-level interest in their employees' reproductive health decisions and (2) are not formal religious organizations exempted from discrimination laws. This explains why the City has persistently refused to disavow enforcing Local Law 20 against the tiny number of crisis pregnancy centers that qualify as expressive associations,[11] like Evergreen: there are simply no other likely violators of the law.

### 3. The district court's finding that Evergreen cares only about an employee's beliefs, not actions, demonstrates a fundamental misunderstanding of Evergreen and exceeds the Court's constitutional role in Evergreen's expressive association.

The district court demonstrates a fundamental misunderstanding of Evergreen and what it cares about. The court, analyzing the evidence that (1) Evergreen rejected job applicants because of their positions on reproductive health decisions; and (2) Rev. Harden said he would not hire an applicant if she said she had an abortion and would do so again, found that "the key consideration in whether to hire someone is the applicant's thoughts or beliefs about their own past sexual or reproductive health decisions, not the decision itself." JA 38.

Beliefs and actions are inextricably intertwined; each gives expression to the other. Actions speak louder than words. Evergreen's mission, unquestioned by the City, involves "saving children from abortion," and "Evergreen believes that every

---

[11] See *infra* at pp. 31-32.

abortion claims an innocent life." JA 1029-31 (¶¶ 8, 15). This mission—the reason for Evergreen's existence—is absolutely at odds with an employee having an abortion. Evergreen would be hypocritical, and fraudulent, if it cared about what an employee said but not whether that employee "claimed an innocent life" by having an abortion.

The district court's conclusion reflects possible confusion about the fact that Evergreen has employed post-abortive women in the past. The City, and the district court, wrongly interpret this as meaning Evergreen does not care about abortion itself, but instead about what an employee says (or is willing to say) about abortion.

As stated in more detail *supra* at pp. 22-23, there are many people who have had abortions in the past and, formed by that experience, have become committed, compelling advocates for Evergreen's message. That does not mean Evergreen condones the abortion, and it certainly does not mean that Evergreen could, would, or should accept a current employee's decision to have an abortion.

An addict in recovery may make a compelling counselor at a rehab clinic, but no one would suggest that employing a person with a substance use disorder in his or her past means that the clinic has a neutral stance on the use of addictive substances. Nor would anyone (or any law) suggest that a clinic must (or even

could) retain in its employ someone who is actively abusing alcohol or drugs, as long as she professes support for the clinic's healing message.

The district court also adopted Judge Nardacci's logic in considering the State Boss Bill:

> As Judge Nardacci explained, "[i]f an applicant who has had an abortion but has become a pro-life advocate has been, and can still be, hired, the decision not to hire a similar applicant who did not become a pro-life advocate after having an abortion is based on that applicant's beliefs, not the applicant's reproductive health decisions."

JA 38. As an initial matter, this scenario regards applicants, not current employees. Evergreen has never said it would retain a current employee, working at a crisis pregnancy center, who has an abortion.

But Judge Nardacci's attempt to separate beliefs from actions presents other obvious problems—namely a fictional loophole to anti-discrimination provisions. Consider a rejected applicant who has had an abortion, discussed it with Evergreen, was rejected from a position at Evergreen, and sues Evergreen under Local Law 20. And consider that Evergreen tells the court, "We did not reject her because she had an abortion, we rejected her *because of what she said about having an abortion.*" Does this Court believe that defense will hold up?

Indeed, that applicant might respond by saying that the abortion was a "but-for" cause of the employment decision; without the abortion, there would be no discussion about the abortion. New York's discrimination law actually requires

*less* of a plaintiff than but-for causation. A New York employee or prospective employee does not have to show but-for causation, but "need satisfy only the less-demanding requirement that her [reproductive health decision] was a motivating factor in the termination decision—a part of the employer's decision-making process, rather than alone a but-for cause of the employer's decision to fire the plaintiff." *Pustilnik v. Battery Park City Auth.*, 71 Misc. 3d 1058, 1068, 147 N.Y.S.3d 357, 366 (N.Y. Sup. Ct. 2021); *see also Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 127, 946 N.Y.S.2d 27, 40 (2012) (New York's discrimination laws must be construed "as liberally as reasonably possible in favor of plaintiffs").

The district court's tortured attempt to distinguish between beliefs and actions within Evergreen's mission only underscores the need for the deference the Constitution provides to expressive associations. The Constitution protects Evergreen's right to determine whether someone with an abortion in her past, present, or future can support its mission, without interference from the City.

**4. Evergreen's screening of its employees for pro-life commitment, a factor the district court relied upon in finding that Evergreen is unlikely to violate Local Law 20, is itself a violation of Local Law 20.**

The district court, in finding that Evergreen is unlikely to violate Local Law 20, noted that "[t]he evidence overwhelmingly demonstrates that Evergreen carefully screens and selects its employees to ensure that their beliefs surrounding

28

abortion and birth control comport with Evergreen's." JA 36. However, how Evergreen screens employees *itself violates Local Law 20.*

Evergreen's Staff Statement is in direct conflict with Local Law 20's speech code, which disallows any statement "which expresses, directly or indirectly, any limitation, specification or discrimination . . . as to reproductive health decisions . . . or any intent to make any such limitation, specification or discrimination." Employees are required to sign the document, and in doing so they agree to "uphold" Evergreen's position that abortion claims an innocent life. The only reasonable interpretation of this agreement is that employees cannot uphold this position *and* have an abortion.

Similarly, Evergreen's job listings require a "pro-life commitment," (JA 1215, 1242, 1250) which is clearly incompatible with the act of having an abortion. The furthest thing from a pro-life commitment is the act of having an abortion.

Evergreen does not merely "intend" to speak in violation of Local Law 20; it currently, consistently and *actually* speaks in a way that violates Local Law 20.

It was error for the district court to find that Evergreen's now-illegal screening procedures make Evergreen less likely to otherwise violate Local Law 20. Instead, that Evergreen's existing screening procedures currently violate Local Law 20 supports Evergreen's standing.

* * *

29

Evergreen has demonstrated that it is actively violating Local Law 20 in multiple ways, and that it proposes and intends to violate it further by terminating employees who make reproductive health decisions that violate Evergreen's mission and beliefs. This is sufficient to leave open only the question whether there is a credible threat of Local Law 20 being enforced.

**B.    There is a credible threat of enforcement.**

> **1.    There is a presumption that the government intends to enforce its legislation, and it is the government's burden to defeat that presumption.**

"[I]n numerous preenforcement cases where the Supreme Court has found standing on a showing that a statute indisputably proscribed the conduct at issue, it did not place the burden on the plaintiff to show an intent by the government to enforce the law against it." *Hedges*, 724 F.3d at 197. "Rather, it presumed such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed." *Id*.

The credible threat of prosecution requirement is a "quite forgiving" requirement that sets up only a "low threshold" for a plaintiff to surmount. *Antonyuk v. James*, 120 F.4th 941, 1005 (2d Cir. 2024); *see also Hedges,* 724 F.3d at 197 ("[N]either this Court nor the Supreme Court has required much to establish this final step ...."). The district court erred by misapplying this "low threshold"

30

and putting the burden on Evergreen to establish a concrete probability of enforcement of Local Law 20.

## 2. The City has not disavowed enforcement of Local Law 20, but has instead fought tooth and nail to protect the statute.

Had the district court applied the proper standard, it would have sought from the City a disavowal of enforcement of Local Law 20 against Evergreen, and it would have found none. *Susan B. Anthony List*, 573 U.S. at 159 (citing absence of disavowal as support of credible threat); *Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010) ("The Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do.").

Nor could disavowal even fully eliminate the threat of enforcement in this case, due to the private right of action in the law and due also to the fact that such a disavowal would not bind future administrations. But the City could at least attempt disavowal.

Instead, the City has, for five years in this case, fought tooth and nail to protect their right to enforce Local Law 20 against Evergreen. Their argument includes continuing to argue that subjecting Evergreen to Local Law 20 serves a compelling governmental interest. Record, ECF 41 at 11. If the City works this

hard to protect the law, there is no reason to believe it will not enforce it at first opportunity.[12]

### 3. Evergreen is in a limited category of employers targeted by Local Law 20 *and* targeted by the City.

Evergreen is exactly the type of employer Local Law 20 targets and exists to punish. JA 564-65, 774-75 (councilperson characterizing Local Law 20 as aimed at "tell[ing] employers that they can no longer force their religious views onto the— the women—and families" of New York City). It is hard to imagine the law being enforced against almost anyone *other than Evergreen*, since most employers who are not formal religious entities[13] would have no reason to dismiss people on the basis of reproductive decisions.

Evergreen is in the City's crosshairs. The City's "Abortion Access Hub" refers to crisis pregnancy centers like those operated by Evergreen as "fake clinics"

---

[12] The State of New York and a majority of its voters (who hold a private right of action under Local Law 20) found reproductive health discrimination important enough that the New York Constitution was amended *this year* to add those who exercise "reproductive healthcare and autonomy" as a protected class for discrimination purposes. N.Y. Const. art. I, § 11(a). While the district court wonders if Local Law 20 will ever be enforced, legislators and pro-choice voters are adding arrows to their quivers.

[13] Many formally religious employers (churches and religious schools) can take considerable refuge in the ministerial exception to discrimination laws recognized in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 190-191 (2012), leaving Evergreen among the only available targets for enforcement.

and advises the public about how to report them to authorities.[14] The City has

implemented an "outreach and education campaign" regarding crisis pregnancy

centers.[15] The City also has a history of unconstitutional attempts to regulate crisis

pregnancy centers. *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 249-

250 (2d Cir. 2014) (finding that mandatory disclosures for crisis pregnancy centers

in the City violate the centers' free speech rights and could not survive strict

scrutiny).

Evergreen's fears of enforcement are thus not "imaginary or wholly

speculative," *Cerame v. Slack*, 123 F.4th 72, 82 (2d Cir. 2024) (quoting *Babbitt*,

442 U.S. at 302).

### 4. Local Law 20's private right of action also provides a credible threat of enforcement.

The Supreme Court and several circuits have found that a private right of

action supports standing. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 583

(2023) (provision allowing "any person" to file complaint and initiate potentially

burdensome administrative process supported standing); *see also Susan B. Anthony*

---

[14] "The New York City Abortion Access Hub,"
https://www.nyc.gov/assets/doh/downloads/pdf/ms/abortion-hub-info.pdf

[15] "Mayor Adams Signs Legislation Guaranteeing Access to Safe, Affordable Abortion in New York City," August 12, 2022,
https://www.nyc.gov/office-of-the-mayor/news/591-22/mayor-adams-signs-legislation-guaranteeing-access-safe-affordable-abortion-new-york-city#/0

*List*, 573 U.S. at 164-65; *Isaacson v. Mayes*, 84 F.4th 1089, 1101 (9th Cir. 2023);

*Brown v. Kemp*, 86 F.4th 745, 768 (7th Cir. 2023).

Disregarding clear precedent, the district court stated:

Here, there is no evidence that any enforcement action or private lawsuit has been brought against Evergreen for allegedly violating Local Law 20 as to any employee or applicant.

JA 41. However, "the history of enforcement carries little weight when the

challenged law is relatively new." *Cerame*, 123 F.4th at 86 (quoting *Tingley v.*

*Ferguson*, 47 F.4th 1055, 1069 (9th Cir. 2022) (cleaned up)); *Brooklyn Branch of*

*Nat'l Ass'n for Advancement of Colored People v. Kosinski*, 657 F. Supp. 3d 504,

519 (S.D.N.Y. 2023) ("Courts routinely allow pre-enforcement challenges to

rarely-invoked statutes . . .").

### 5. The district court turned this Court's threat-of-enforcement analysis on its head.

The district court turned this Court's credible threat-of-enforcement

analysis on its head, presuming that the government *will not* enforce its law,

despite no disavowal and Local Law 20 clearly not being "moribund." *Hedges*,

724 F.3d at 197. A more recent decision of this Court makes clear that a plaintiff

does not need to provide "specific indications that enforcement can be expected."

*Antonyuk*, 120 F.4th at 1005-06. This Court explained:

"While evidence [that a plaintiff faced either previous enforcement actions or a stated threat of future prosecution] is, of course, relevant to assessing the credibility of an enforcement threat, none of these cases suggest that such

34

evidence is *necessary* to make out an injury in fact." Instead, we reiterated that, although "the presumption that the government will enforce its own laws 'in and of itself, is not sufficient to confer standing,' **we 'presume such intent [to enforce the law] in the absence of a disavowal by the government or another reason to conclude that no such intent existed.' "**

…

[T]he Plaintiffs here challenge a law "enacted ... just months before [they] brought this action" which is "designed to curb the very conduct in which [they] intend[] to engage"; "there is no indication that the [defendants] ha[ve] disavowed enforcement" of the challenged law; and we have "no reason to doubt that the [State] will enforce its recently enacted law against those who violate its terms."

*Antonyuk*, 120 F.4th at 1005-06 (cleaned up and bolded emphasis added)

(applying *Vitagliano v. County of Westchester*, 71 F.4th 130, 138-139 (2d Cir.

2023) and *Babbitt*, 442 U.S. at 302).

Antonyuk controls here. Article III requires "much less" than "a rigorous inquiry into the chances that a given plaintiff will be prosecuted." *Antonyuk*, 120 F.4th at 1005. Evergreen is "not without some reason in fearing prosecution," and its fears are neither "imaginary [n]or wholly speculative." *Id.* at 1007 (quoting *Babbitt*, 442 U.S. at 302).[16]

---

[16] The district court cited neither *Antonyuk* nor *Vitagliano*, which together represent an important clarification of this Court's pre-enforcement standing analysis. *See Hulinsky v. Cnty. of Westchester*, 22-CV-06950 (PMH), 2025 WL 835646, at *5 (S.D.N.Y. Mar. 14, 2025) ("since [finding in 2023 that the plaintiffs did not have standing], the Second Circuit has in several decisions underscored the *minimal burden* a plaintiff carries to establish pre-enforcement standing.") (emphasis added) (citing *Antonyuk*, *Cerame* and *Vitagliano*).

**II.    Evergreen has standing to maintain its free speech claim because Local Law 20 bars speech in which Evergreen already engages.**

The district court analyzed the standing question only as it relates to Evergreen's expressive association claim. The court's entire analysis regarded Evergreen's past and current hiring practices.

But the free speech question does not involve whether Evergreen has hired people who have had abortions or has ever fired someone who had an abortion. It is only about Evergreen's speech, which Local Law 20 clearly affects.

Local Law No. 20 *expressly* abridges speech, making it illegal:

[f]or any employer . . . or an employee or agent thereof to declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination as to . . . sexual and reproductive health decisions . . . or any intent to make any such limitation, specification or discrimination.

Section 3(1)(d).

This provision abridges Evergreen's current, consistent speech in multiple ways. As described above, Evergreen employees are required to sign the Staff Statement, which was developed to ensure that employees hold to the standards that Evergreen espouses. JA 1220, 1252-55. This document requires, among other things, that employees *uphold* Evergreen's position on abortion ("every abortion claims an innocent life"). *Id*. The only reasonable interpretation of this agreement is that employees cannot uphold this position *and* have an abortion.

36

Similarly, Evergreen's job listings require a "pro-life commitment," (JA 1215, 1242, 1250) which is clearly incompatible with the act of having an abortion.

Finally, Evergreen has stated that it will continue to make employment decisions in line with its religious and moral beliefs and to protect its associational rights:

> We intend to take adverse employment action against employees who choose to procure abortions, advocate for abortion . . . or otherwise violate Evergreen's organizational policies regarding abortion and sexual morality.

JA 42 at ¶ 34; *see Babbitt*, 442 U.S. at 298 (standing when plaintiff has "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute"). Rev. Harden confirmed in his deposition:

> Q. [H]ow would their answers to the questions . . . affect the hiring process?
> A. Well, if -- if -- if they participated in abortion, for example, in some form or fashion, and would do it again, that would preclude us from hiring them.

JA 1085-88. Harden continued: "We're asking about beliefs . . . and behaviors." JA 1240.

Evergreen does not merely "intend" to speak in violation of Local Law 20; it currently, consistently and *actually*[17] speaks in a way that violates Local Law 20 by expressing discrimination regarding reproductive health decisions.

---

[17] All that is required for standing is that "the plaintiff's intended conduct is '*arguably* proscribed' by the challenged statute, not whether the intended conduct is *in fact* proscribed." *Picard v. Magliano*, 42 F.4th 89, 98-99 (2d Cir. 2022) (emphases in original).

The district court did not conduct a standing analysis with an eye toward Evergreen's speech claim; it only looked at the expressive association claim. Its error is clear and its decision should be reversed.

**III. Evergreen should be granted summary judgment against enforcement of Local Law 20, because it interferes with Evergreen's right to organize its staff and to speak freely to employees and job applicants about abortion.**

### A. Legal Standards

#### 1. Decision on Appeal

"An appellate court has the power to decide cases on appeal if the facts in the record adequately support the proper result," *Stetson v. Howard D. Wolf & Assocs.,* 955 F.2d 847, 850 (2d Cir.1992), or "if the record as a whole presents no genuine issue as to any material fact." *King v. Commissioner,* 458 F.2d 245, 249 (6th Cir.1972). Thus, if the Court finds that a party must prevail as a matter of law, a remand is unnecessary. *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago*, 93 F.3d 1064, 1072 (2d Cir. 1996).

#### 2. Summary Judgment

Summary judgment is warranted where the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

### 3. Permanent Injunction

A permanent injunction should issue when the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The "alleged violation of a constitutional right triggers a finding of irreparable injury," *Conn. Dep't of Env't Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004).

### B. Evergreen is entitled to summary judgment on its expressive association claim.

"Freedom of association . . . plainly presupposes a freedom not to associate." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984)*.* "Forcing a group to accept certain members [that] impair the ability of the group to express [their] views, and only those views, . . . infringes the group's freedom of expressive association." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). Only where a government shows that a law survives strict scrutiny may it abridge this freedom. *Id*.

Because (1) Evergreen clearly engages in expressive activity, (2) Local Law 20 "significantly affect[s] [Evergreen's] ability to advocate public or private viewpoints," and (3) Local Law 20 cannot survive strict scrutiny, Evergreen is

entitled to summary judgment on its expressive association claim. *Id.* at 648, 650, 657-58.

### 1. Evergreen engages in expressive activity.

As the Supreme Court held in *Dale*, "[t]o determine whether a group is protected by the First Amendment's expressive associational right, [this Court] must determine whether the group engages in 'expressive association.'" *Dale*, 530 U.S. at 648.

The district court in the State Boss Bill case previously agreed that Evergreen engages in expressive association, holding that "the allegations in the Complaint clearly indicate that Plaintiffs aim to share their pro-life message with the world." *Slattery v. Cuomo*, 531 F. Supp. 3d 547, 567 (N.D.N.Y. 2021). On appeal, the Second Circuit "agree[d] with the district court that Evergreen is engaged in expressive association." *Slattery v. Hochul*, 61 F.4th at 286-87.

### 2. Local Law 20 significantly impairs Evergreen's expressive association.

The Supreme Court held in *Dale* that courts must "give deference to an association's view of what would impair its expression." *Dale*, 530 U.S. at 653 (citing *Democratic Party of United States v. Wisconsin ex rel. La Follette,* 450 U.S. 107, 123-24 (1981) ("a State, or a court, may not constitutionally substitute its own judgment for that of the [association].")).

Evergreen's statement of material facts shows how Local Law 20 significantly impairs Evergreen's ability to associate with others to advance their pro-life viewpoint. JA 565 (law restricts Evergreen's "freedom to associate with like-minded individuals" and forbids them from "enforc[ing] employment standards of conduct" in accordance with beliefs); JA 566 (law punishes Evergreen for acting upon decision of employee that violates Evergreen's employment policies); JA 567 (compliance would "undermine and compromise Plaintiff's pro-life mission, messages, and purpose, and compel Plaintiff to associate with employees who do not share such mission, messages, and purpose"); JA 567 (enforcement and penalties "would destroy Plaintiff's ability to continue its pro-life mission" and constitute "a threat to Evergreen's existence"); JA 566 (law "coerces Plaintiff to betray its moral and religious beliefs and its mission of preventing abortion and helping women in crisis pregnancies"); JA 567 (law denies Evergreen "the right to organize its staff, to communicate to the staff, to correct, discipline or terminate staff who reject Plaintiff's moral and religious position"); JA 567 ("[f]orcing Plaintiff to hire, retain, refrain from disciplining or terminating . . . personnel who do not share Plaintiff's beliefs . . . would fatally compromise Plaintiff's pro-life message and mission").

Local Law 20 forces Evergreen to associate with and employ those who through their actions contradict and betray Evergreen's pro-life beliefs and

mission. This "forced inclusion," *Dale*, 530 U.S. at 648, dilutes Evergreen's beliefs and compromises its mission. *See Roberts*, 468 U.S. at 633 (O'Connor, J., concurring) ("the selection of members is the definition of [an association's voice.").

Evergreen's refusal to confuse their clients and donors by employing counselors who support or have abortions is squarely in line with the Boy Scouts' claim in *Dale*. The Supreme Court recognized that Dale's mere "presence in the Boy Scouts would, at the very least, force the organization to send a message, both to the youth members and the world," of approval of homosexual conduct. *Dale*, 530 U.S. at 692. The Court held that forcing "the Boy Scouts [to] retain Dale as an assistant scoutmaster would significantly burden the organization's right to oppose or disfavor homosexual conduct." *Id*. at 659. Similarly, in *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos*., 515 U.S. 557, 574-75 (1995), the Court recognized that the very "presence of the organized marchers" would impermissibly superimpose a message that the parade's organizers did not wish to communicate. 515 U.S. at 574-75. *See also New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 179 (2d Cir. 2020) ("Compelled hiring, like compelled membership, may be a way in which a government mandate can 'affect[ ] in a significant way [a] group's ability to advocate public or private viewpoints.'").

The Second Circuit agreed with Evergreen's analysis, albeit regarding the

State's version of Local Law 20. "A 'regulation that forces the group to accept members it does not desire . . . may impair the ability of the original members to express only those views that brought them together.'" *Slattery v. Hochul*, 61 F.4th at 287 (citing *Roberts*, 468 U.S. at 623). This Court reasoned as follows:

> The statute forces Evergreen to employ individuals who act or have acted against the very mission of its organization. . . . The right to expressive association allows Evergreen to determine that its message will be effectively conveyed only by employees who sincerely share its views. To decide whether someone holds certain views—and therefore would be a reliable advocate— Evergreen asks whether that person has engaged or will engage in conduct antithetical to those views. Evergreen has plausibly alleged that, by foreclosing Evergreen's ability to reject employees whose actions suggest that they believe the opposite of the message it is trying to convey, § 203-e severely burdens Evergreen's First Amendment right to freedom of expressive association. *See Roberts*, 468 U.S. at 622, 104 S.Ct. 3244 (noting that "forc[ing a] group to accept members it does not desire ... may impair the ability of the original members to express only those views that brought them together"). For this reason, strict scrutiny applies.

*Slattery v. Hochul*, 61 F.4th at 288-89.

This Court found that it is a "severe burden" on Evergreen's expressive association to "foreclos[e] Evergreen's ability to reject employees whose actions suggest that they believe the opposite of the message it is trying to convey . . ." *Id.*; *see also Our Lady's Inn v. City of St. Louis,* 349 F. Supp. 3d 805 (E.D. Mo. 2018).

### 3. Local Law 20 fails strict scrutiny.

Strict scrutiny is the "most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). For the City to meet its burden,

it must show that Local Law 20 serves interests "of the highest order," *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993), and is "narrowly tailored" to serve those paramount interests, *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). "[I]t is the rare case in which . . . a law survives strict scrutiny." *Burson v. Freeman*, 504 U.S. 191, 211 (1992).

### a.  The City can show no compelling interest.

To establish a compelling interest, a government "must do more than simply posit the existence of the disease sought to be cured"; it "must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994) (internal quotations and citations omitted). The State, that is, must "present more than anecdote and supposition," and must show an "actual problem" to be solved. *Playboy Entm't Grp., Inc.*, 529 U.S. at 822.

The City below argue that eliminating employment discrimination is a compelling governmental interest. Record, ECF 41 at 11. But the question "is not whether the [State] has a compelling interest in enforcing its non-discrimination [law] generally." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021). "[B]roadly formulated interests" do not suffice. *Gonzales v. O Centro Espirita Beneficente Uniaodo Vegetal*, 546 U.S. 418, 431 (2006). Instead, the State must show a "[compelling] interest in" coercing *Evergreen's* specific expression.

44

*Fulton*, 141 S. Ct. at 1881; *Dale*, 530 U.S. 658-59; *303 Creative LLC v. Elenis,* 143 S. Ct. 2298, 2314-15 (2023) (the government may "prohibit discrimination" in places of public accommodation but when employment "law and the Constitution collide," the Constitution "must prevail.").

Local Law 20's legislative history reveals no actual problem to be addressed, much less a compelling interest to justify its First Amendment violation. Instead of pointing to situations Local Law 20 remedies, the City cited *Hobby Lobby* as a decision that would "live in infamy," and characterized Local Law 20 as aimed at "tell[ing] employers that they can no longer force their religious views onto the—the women—and families" of New York City. JA 565.[18] The City admits it is unaware of any investigations or enforcement actions related to Local Law 20 since its passage over five years ago. JA 555-56. Contrary to what the Supreme Court requires, conjecture and supposition are all the State has offered— it has imagined a harm in order to create an unnecessary but politically popular "cure." *See Turner Broad. Sys., Inc.*, 512 U.S. at 664; *Playboy Entm't Grp., Inc.*, 529 U.S. at 822.

---

[18] A district court found that a similar anti-discrimination law in St. Louis failed strict scrutiny because the City of St. Louis proffered only "in general terms" "concern[s] about discrimination on the basis of reproductive health decisions." *Our Lady's Inn,* 349 F. Supp. 3d at 822.

The State does not have an interest of the highest order in enforcing Local Law 20 against the particular religious claimant in this case—a pro-life agency with fewer than ten employees. *O Centro*, 546 U.S. at 431 (the state must justify the application of the challenged law to "particular religious claimants."). This is exactly the reasoning this Court used, finding that the interest in preventing discrimination based on certain conduct, compelling or not, "cannot overcome the expressive rights of an association dedicated to outlawing or otherwise opposing that specific conduct." *Slattery v. Hochul,* 61 F.4th at 289.

This Court balanced the rights of current or prospective employees of Evergreen with the associational rights of Evergreen, finding that applicants/employees could work elsewhere but Evergreen would be dramatically affected by employing dissenters:[19]

> If Evergreen had the right to exclude employees who have had an abortion, the right to be free of discrimination for having an abortion will be impaired only to the limited extent that a person cannot join the specific group or groups that oppose abortion. But if the state could require an association that expressly opposes abortion to accept members who engage in the conduct the organization opposes, it would severely burden the organization's right of expressive association. "It would be difficult," to say the least, for an

---

[19] Concentration on the effects of the law on Evergreen specifically is in line with recent Supreme Court precedent finding that the question "is not whether the [State] has a compelling interest in enforcing its non-discrimination [law] generally, but whether it has such an interest in" coercing Evergreen specifically. *Fulton*, 141 S. Ct. at 1881. This principle applies to free exercise cases but "[o]utside the Free Exercise area as well," application of the law to the particular claimant is important because "context matters," and "'relevant differences' must be taken into account." *O Centro*, 546 U.S. at 431-32.

organization "to sincerely and effectively convey a message of disapproval of certain types of conduct if, at the same time, it must accept members who engage in that conduct." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 863 (7th Cir. 2006). Evergreen's beliefs about the morality of abortion are "its defining values; forcing it to accept as members those who engage in or approve of [that] conduct would cause the group as it currently identifies itself to cease to exist." *Id*.

*Slattery v. Hochul*, 61 F.4th at 289-90.

### b. Local Law 20 is not narrowly tailored.

To be narrowly tailored, Local Law 20 must "target[ ] and eliminate[ ] no more than the exact source of the evil it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (internal citations omitted). It is *the City* that bears the burden of demonstrating that there are no less restrictive alternatives that would further its alleged interests. *Playboy Entm't Grp., Inc*., 529 U.S. at 813. "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Id.*

Since there was never any "evil" crying out for remedy to begin with, even the most precise tailoring would not be remedial. Yet Local Law 20 attacks First Amendment rights as a first resort and intentionally avoids safe harbors or exemptions for even those organizations, like Evergreen, who cannot both pursue their mission and comply with the statute's requirements. Where a state has other means "at its disposal" that are "less restrictive" but fails to take them, it will not pass the "exceptionally demanding" least restrictive means test. *Burwell v. Hobby*

*Lobby Stores, Inc.*, 573 U.S. 682, 728-730 (2014). Here, the City could have

exempted, at the very least, organizations like those of Evergreen that *exist to*

*oppose abortion*.

### C. Evergreen is entitled to summary judgment on its free speech claim.

The district court did not rule on the merits of the free speech claim, but stated

outright that it would reject Evergreen's free speech claim and even left the door

open to rejecting Evergreen's expressive association claim:

> If the Court were to reach the merits of this case, at minimum, it would grant
> the City's motion for summary judgment as to Evergreen's First Amendment
> free speech and free exercise of religion claims pursuant to *Slattery v. Hochul*,
> 61 F.4th at 292-94.

JA 45. *Slattery v. Hochul* involved a speech claim, but not one that has any bearing

on this case. Dealing with a different law—the State's Boss Bill not Local Law

20—Evergreen's free speech claim involved a claim that, by affecting its hiring,

the Boss Bill affected Evergreen's message. *Slattery v. Hochul*, 61 F.4th at 291.

This Court found that hiring and firing was not, standing alone, speech. *Id*.

But Local Law 20, unlike the State's Boss Bill, expressly regulates speech,

making it illegal:

> [f]or any employer . . . or an employee or agent thereof to declare, print or
> circulate or cause to be declared, printed or circulated any statement,
> advertisement or publication, or to use any form of application for employment
> or to make any inquiry in connection with prospective employment, which
> expresses, directly or indirectly, any limitation, specification or discrimination

as to . . . sexual and reproductive health decisions . . . or any intent to make any such limitation, specification or discrimination.

Section 3(1)(d).

This speech code restricts Evergreen from expressing its beliefs not only to their current personnel, but also to prospective personnel and the public. The law causes Evergreen to limit and censor its constitutionally guaranteed speech regarding abortion and the dignity and value of life, because such expression could be used as evidence of discrimination under the quoted provision. Evergreen's speech is further suppressed by restricting it from expressing preferences as to whether employees share and live out common beliefs as to abortion. By barring said speech, the City has expressly interfered with Evergreen's constitutionally protected speech.

The district court recognized speech that seems to directly violate Local Law 20:

> During the hiring process, Evergreen verbally informs candidates about its code of conduct, which is not a written document, but "relate[s] to . . . a Biblical ethic of sexuality," including "abstinence for non-married people [and] rejection of abortion[.]" (*Id.* at 70:20–71:18.)

JA 18. Given that the district court notes that Evergreen makes this code of conduct known "verbally" and "not in a written document," perhaps it mistakenly believes that Local Law 20's speech code applies only to written documents. In

any case, the district court identifies a statement that makes it clear that Evergreen does not allow employees who have abortions. This violates Local Law 20.

As described *supra* at p. 29, Evergreen's Staff Statement, required from employees, violates Local Law 20 by stating that Evergreen limits its employees to those who "uphold" the position that abortion takes an innocent life. No reasonable person could sign this document and believe that Evergreen would allow her employment to continue if she had an abortion.

The district court went through mental gymnastics to avoid this obvious finding:

> True, Evergreen now requires its employees to agree to "uphold" the "Positional Statements" contained in its Statement of Principle. (*See* Statement of Principle, Dkt. 64-5, at ECF 1.) But that document does not preclude Evergreen's employees from receiving sexual or reproductive health services, which is what Local Law 20 protects.

JA 37. It is impossible to (1) "uphold" Evergreen's position that abortion takes an innocent life while also (2) procuring an abortion, *i.e.*, according to the Staff Statement, take an innocent life.

According to the district court, Evergreen only cares that an employee *believes* that abortion takes an innocent life, but Evergreen does not care if the employee *actually takes an innocent life.* This is yet another fundamental misunderstanding by the district court of what is meaningful to Evergreen. Its

mission is to save lives by preventing abortion, not to simply have the appearance of opposing abortion.

Further, Evergreen's job listings state a requirement of "pro-life commitment," which is incompatible with having an abortion. JA 1215, 1242, 1250. Evergreen also asks prospective employees about their experiences with abortion, and their answers affect whether they are hired. JA 1085-88, 1215. Local Law 20's speech code makes all these statements illegal and therefore violates Evergreen's right to free speech.

Moreover, because it "applies to particular speech because of the topic discussed or the idea or message expressed," Local Law 20 is a content-based speech regulation. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163-64 (2015) ("[R]egulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."). To determine whether a regulation is content-based or content-neutral, courts must ask "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Hobbs v. County of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005). Here, the legislative history, as well as the law's language, demonstrate that Local Law No. 20 was passed in order to mute employers who would limit an employee's access to birth control. Because Local Law No. 20 was passed "because of disagreement with the message" conveyed by religious employers

objecting to participating in abortion and contraception, it is content-based and must survive strict scrutiny (which, as described *supra* at pp. 43-48, it cannot).

Moreover, because, in effect, Local Law 20 does not ban *all* speech about reproductive health decisions, but only the pro-life perspective, it engages in viewpoint discrimination, "an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). The City may claim that Local Law 20 is viewpoint-neutral, since it ostensibly applies to all employers and to all reproductive health decisions. However, this neutrality is illusory. Local Law 20 restricts the speech of only pro-life employers, because pregnant women who choose *not* to have abortions are already protected by state and federal pregnancy and gender discrimination laws. *See Krause v. Lancer & Loader Grp.*, LLC, 965 N.Y.S.2d 312, 319 (Sup. Ct. 2013) (describing laws barring pregnancy discrimination); *Bailey v. New York State Div. of Hum. Rts.*, 959 N.Y.S.2d 833, 838 (Sup. Ct. 2012) (describing employment discrimination protections for women who have children). A ban on speech such as that imposed by Local Law 20, which burdens only one side of the political spectrum in both effect and intention, constitutes viewpoint discrimination, which is "presumed to be unconstitutional." *Rosenberger*, 515 U.S. at 829; *see also Arizona Life Coal. Inc. v. Stanto*n, 515 F.3d 956, 971-72 (9th Cir. 2008).

"There are various situations which will lead a court to conclude that, despite the seemingly neutral justifications offered by the government, nonetheless the decision to exclude speech is a form of impermissible discrimination." *Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 87 (1st Cir. 2004). More than one of those situations is present here: "[S]uspicion [of impermissible discrimination] arises where the viewpoint-neutral ground is not actually served very well by the specific governmental action at issue; where, in other words, the fit between means and ends is loose or nonexistent." *Id.* at 87. Here, where there is no evidence of any "discrimination" the statute ostensibly addresses, the record supports far more than a "suspicion" of non-neutrality based on a "loose . . . fit between means and ends." *Id*. Moreover, the bill sponsors' avowed intention to send a message to pro-life employers supports the conclusion that Local Law 20 effects viewpoint discrimination: where a prohibition is of "core political speech that is critical of existing governmental policy, [courts] are especially wary of viewpoint discrimination." *Id.* at 86; *see also Sorrell v. IMS Health Inc*., 564 U.S. 552, 565 (2011) (finding viewpoint discrimination based on legislative intent); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 268 (1977) (noting that "statements by members of the decisionmaking body" may be "highly relevant" to ascertaining intent or motive).

### D. Evergreen satisfies the remaining permanent injunction factors.

The foregoing establishes that Evergreen should prevail on its claims that Local Law 20 violates its expressive association and free speech rights.

Supreme Court precedent is clear: "Loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Statharos v. N.Y. City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999).

Any argument that the City would be harmed by the issuance of a permanent injunction in this case, or that it would be against the public interest, would be frivolous. Local Law 20 does not remedy any actual problem, but it does violate Evergreen's constitutional rights and those of third parties not before the court. There can be no public interest in a continued violation of those rights. "[N]either the government nor the public generally can claim an interest in the enforcement of an unconstitutional law." *ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003).

### CONCLUSION

For the reasons set forth above, this Court should reverse the district court's order and enter judgment in favor of The Evergreen Association, Inc.

May 12, 2025                          Respectfully submitted,

                                      */s/ J. Matthew Belz*
                                      J. Matthew Belz
                                      Timothy Belz
                                      CLAYTON PLAZA LAW GROUP, L.C.
                                      Mary Catherine Martin
                                      THOMAS MORE SOCIETY
                                      112 South Hanley, Second Floor
                                      St. Louis, Missouri 63105-3418
                                      Phone: (314) 726-2800
                                      Fax: (314) 863-3821
                                      jmbelz@olblaw.com

                                      *Counsel for Appellant The Evergreen Association, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Local Rule 32.1(a)(4)(A) because, excluding the portions exempted by Fed. R. App. P. 32(f), this brief contains 12,669 words. This brief also complies with the typeface and typestyle requirements of Fed. R. App. P. 32 (a)(5) and Fed. R. App. P. 32(a)(6).

May 12, 2025                    */s/ J. Matthew Belz*
                               J. Matthew Belz
                               *Counsel for Appellant The Evergreen Association, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2025, this brief and the accompanying appendices were filed electronically with the Clerk of Court through the Court's electronic filing system, which will accomplish service on the following counsel:

Lauren O'Brien
NEW YORK CITY LAW DEPARTMENT
100 Church Street
New York, NY 10007
Counsel for Appellee

May 12, 2025                    */s/ J. Matthew Belz*
                               J. Matthew Belz
                               *Counsel for Appellant The Evergreen Association, Inc.*