# 25-520

IN THE

# United States Court of Appeals

**FOR THE SECOND CIRCUIT**

THE EVERGREEN ASSOCIATION, INC.,

*Plaintiff-Appellant*,

– against –

CITY OF NEW YORK,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**BRIEF OF *AMICI CURIAE* NEW YORK CIVIL LIBERTIES UNION AND AMERICAN CIVIL LIBERTIES UNION IN SUPPORT OF DEFENDANT-APPELLEE AND IN SUPPORT OF AFFIRMANCE**

New York Civil Liberties Union Foundation, by:

GABRIELLA LARIOS
ELIZABETH GYORI
ROBERT HODGSON
MOLLY K. BIKLEN
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
glarios@nyclu.org

American Civil Liberties Union Foundation, by:

LINDSEY KALEY
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 519-7823
lkaley@aclu.org

Dated: August 18, 2025
New York, N.Y.

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................ii

CORPORATE DISCLOSURE STATEMENT............................................1

AUTHORITY TO FILE AMICUS BRIEF................................................1

INTRODUCTION......................................................................................2

STATEMENT OF INTEREST.................................................................3

ARGUMENT............................................................................................4

    I.     This Court Clarified the Scope of an Employer's Expressive Association Rights in *CompassCare v. Hochul*.............................4

    II.    Applying *CompassCare*, Evergreen Cannot Prove that the Local Law Burdens its Right to Expressive Association. ......................7

    III.   Employees Continue to Face Discrimination Based on Their Reproductive Health Decisions.................................................12

CONCLUSION........................................................................................16

CERTIFICATE OF SERVICE..............................................................17

i

# TABLE OF AUTHORITIES

**Cases**............................................................................Page(s)

*Boy Scouts of America v. Dale*, 530 U.S. 640 (2000)........................... 4, 11

*CompassCare v. Hochul*, 125 F.4th 49 (2d Cir. 2025) ..................... *passim*

*DeJesus v. Fla. Cent. Credit Union*, No. 8:17-CV-2502-T-36TGW, 2018
 WL 4931817 (M.D. Fla. Oct. 11, 2018) ......................................... 15

*Evergreen Ass'n, Inc. v. City of New York*, No. 20-CV-0580, 2025 WL
 416903 (E.D.N.Y. Feb. 6, 2025)...................................................... 8

*Gen. Conf. of Seventh-Day Adventists v. Horton*, No. 24-CV-2866, 2025
 WL 1703806 (D. Md. June 18, 2025) .............................................. 10

*Hall v. Nalco Co.*, 534 F.3d 644 (7th Cir. 2008)..................................... 15

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ....................................... 6

*McMahon v. World Vision, Inc.*, 704 F. Supp. 3d 1121 (W.D. Wash.
 2023), *rev'd on other grounds and remanded*, No. 24-3259, 2025
 WL 2217629 (9th Cir. Aug. 5, 2025) .............................................. 7

*Shomo v. Junior Corp.*, No. 7:11-CV-508, 2012 WL 2401978 (W.D. Va.
 June 1, 2012) ............................................................................... 14

*Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023)............................. *passim*

*Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.*,
 496 F. Supp. 3d 1195 (S.D. Ind. 2020) ............................................ 6

**Statutes, Rules and Regulations**

N.Y. Lab. Law § 203-e ............................................................................ 4

N.Y.C. Admin. Code § 8-107................................................................. 12

**Other Authorities**

Complaint, *McGowan v. Ananas Day Spa et al.*, No. 2:09-CV-00040,
 2009 WL 3290324 (E.D.N.Y. Jan. 6, 2009) .................................... 14

Deborah A. Widiss, *Intimate Liberties and Antidiscrimination Law*, 97 B.U. L. Rev. 2083 (2017) ......................................................... 13

Joan C. Williams, Professor of Law, Univ. of Cal. Hastings, and Director, Ctr. for Worklife Law, *Written Testimony at EEOC Meeting on Unlawful Discrimination Against Pregnant Workers and Workers with Caregiving Responsibilities* (Feb. 15, 2012) .................................................................................... 13

Richard Sandomir, *Ex-Mets Executive Sues Jeff Wilpon, Citing Discrimination over Pregnancy*, N.Y. Times (Sept. 10, 2014), https://www.nytimes.com/2014/09/11/sports/baseball/former-executive-sues-mets-and-wilpon-for-discrimination.html ............. 14

Stephanie Bornstein, *Poor, Pregnant, And Fired: Caregiver Discrimination Against Low-Wage Workers*, Ctr. for WorkLife Law, 11-13 (2011) ....................................................................... 12

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amici curiae* American Civil Liberties Union and New York Civil Liberties Union hereby certify that they have no parent corporations and that no publicly held corporations own 10% of more of their stock.[1]

## AUTHORITY TO FILE AMICUS BRIEF

Pursuant to Federal Rule of Appellate Procedure 29 (a)(2), *amici* state that all parties have consented to the filing of this brief.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amici* state that no party's counsel authored this brief in whole or in part, and that no party or person other than *amici* and their members contributed money toward the preparation or filing of this brief.

## INTRODUCTION

This appeal raises a critical issue: whether an employer can invoke its freedom of association to facially invalidate an employment antidiscrimination law. This Court has already decided that it cannot do so. In *CompassCare v. Hochul*, 125 F.4th 49 (2d Cir. 2025), this Court made clear that to succeed on expressive association claim, an employer must show that "a specific employment decision" will impede its mission—it cannot just assert its mission was threatened in a "vague and generalized sense." *Id.* at 61. Here, where The Evergreen Association does not challenge a "specific employment decision" and instead seeks to facially challenge New York City Local Law 20, which prohibits discrimination based on employees' sexual and reproductive health decisions, it cannot make the showing required by *CompassCare*.

If this Court reaches the merits of Evergreen's expressive association claim, *amici* urge this Court to apply *CompassCare* and hold that Evergreen cannot prove that the Local Law burdens it right to expressive association. *Amici* also write to provide additional background on freedom of association claims in the employment context and to highlight how employees are discriminated against based on their sexual and reproductive health decisions.

2

## STATEMENT OF INTEREST

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with over six million members, supporters, and activists dedicated to defending the principles of liberty and equality embodied in the Constitution. The New York Civil Liberties Union ("NYCLU") is the New York State affiliate of the ACLU, with over 85,000 members across the state. As organizations that advocate for freedom of expression as well as equal rights in the workplace, the ACLU, the NYCLU, and their members have a strong interest in the application of proper standards when evaluating constitutional challenges to civil rights laws. *Amici* have long fought to protect and expand the civil liberties guaranteed under state and federal law, including the rights of women and pregnant people to due process, equality, and reproductive freedom under the law. *Amici* have participated in numerous cases concerning employment discrimination, sex discrimination, and reproductive rights, including First Amendment challenges to antidiscrimination laws. *See, e.g., Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023) (NYCLU as *amicus*); *CompassCare v. Hochul*, 125 F.4th 49 (2d Cir. 2025) (ACLU and NYCLU as *amici*). *Amici* bring expertise in the

3

relevant law and have a strong interest in ensuring the correct analysis and resolution of questions directly implicating gender equality and reproductive autonomy.

## ARGUMENT

### I. This Court Clarified the Scope of an Employer's Expressive Association Rights in *CompassCare v. Hochul.*

In *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023), this Court ruled that the Evergreen Association plausibly alleged, at the motion to dismiss stage, that the New York State Boss Bill—a state statute that prohibits discrimination in employment on the basis of an employee's reproductive health decisions, N.Y. Lab. Law § 203-e—violated its right to expressive association under the First Amendment. Without explanation or analysis, *Slattery* applied freedom of expressive association precedent involving organizations' selection of their *members* and *volunteer leaders* to the dramatically different context of an organization's hiring practices with respect to *paid employees*. *Slattery*, 61 F.4th at 286–91 (applying *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), which involved a voluntary membership association). No other decision from any United States Court of Appeals or the United States Supreme Court had previously extended expressive association rights to

4

the commercial context of employment, and indeed courts have regularly rejected such arguments.

Less than two years after issuing *Slattery*, this Court clarified the proper standard to be applied in evaluating "the scope of an employer's right to expressive association" with respect to its employees in *CompassCare v. Hochul*, 125 F.4th 49, 58 (2d Cir. 2025). Under the applicable standard in the employment context, for an employer to show an infringement on its right to expressive association, "it must show that the [challenged law] threatens its very mission not only in a vague and generalized sense, but in the context of a specific employment decision." *Id.* at 61. This requires an assessment of:

> (1) the responsibilities of the position at issue, including whether it is client-facing and whether it involves expressly or implicitly speaking for the organization, and (2) the particular conduct or attribute of the employee that renders the employment of that person, in that position, a threat to the employer's mission.

*Id.* An employer must therefore "plausibly allege that the [challenged law's] impact on the specific employment decision 'will impede the organization's ability to engage in . . . protected activities or to disseminate its preferred views.'" *Id.* (cleaned up).

In articulating this new standard, this Court recognized that there are "significant differences between voluntary associations and employment relationships," including that employees "rely on their jobs for their livelihoods" and "significant power imbalances often exist" in employment relationships "which may not be present in voluntary associations." *Id.* at 59–60. Therefore, "the long and complex history of regulation of employment relationships" requires a different standard for claims by employers than claims by voluntary associations. *Id.*

This Court also recognized that *Slattery* went further than past precedent, noting that "[t]he Supreme Court has never explicitly addressed whether, and to what extent, an *employer* has a right of expressive association with respect to its paid employees." *Id.* at 58 (emphasis in original). "On the contrary," the Supreme Court has flatly "rejected" such a claim. *Id.* at 58, n. 4 (citing *Hishon v. King & Spalding*, 467 U.S. 69 (1984) (finding that expressive association did not immunize a law firm from Title VII's mandate that it not exclude women from partnership)). Lower courts have also rejected expressive association claims by employers. *See, e.g.*, *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.*, 496 F. Supp. 3d 1195, 1209 (S.D. Ind. 2020) ("*Dale* did

6

not arise from the employment context. The plaintiff sought membership in a private organization. The freedom of association cases relied upon in *Dale* reveal the doctrine's applicability to parade groups, political parties, and other non-employment contexts."); *McMahon v. World Vision, Inc.*, 704 F. Supp. 3d 1121, 1144–45 (W.D. Wash. 2023) (noting *Dale* is "inapplicable to the employment discrimination context" and finding employer's expressive association rights were not implicated in employment discrimination action), *rev'd on other grounds and remanded*, No. 24-3259, 2025 WL 2217629 (9th Cir. Aug. 5, 2025).

The standard this Court articulated in *CompassCare* must govern the expressive association claim in this case and others arising in the employment context.

## II. Applying *CompassCare*, Evergreen Cannot Prove that the Local Law Burdens its Right to Expressive Association.

On appeal, Evergreen argues that because *Slattery* found that the State Boss Bill "severely burden[ed] Evergreen's First Amendment right to freedom of expressive association," Appellant's Br. at 2, the Local Law challenged here is "invalid under the First Amendment," *id.* at 3. Evergreen fails to acknowledge that *Slattery* was decided at the pleading stage, where "all reasonable interferences" must be drawn "in the

plaintiff's favor." *Slattery*, 61 F.4th at 286. Critically, Evergreen entirely disregards this Court's intervening and binding decision in *CompassCare*, which determines the outcome in this case. *See generally* Appellant's Br. (containing no discussion of or citation to *CompassCare*). Here, where *CompassCare* must be applied and a full factual record was developed below, Evergreen cannot prove that the Local Law burdens its right to expressive association.

Evergreen typically employs between five and seven part-time employees, which includes licensed practical nurses, ultrasonographers, "counselors" that lack licensing or accreditation, and an employee who handles "material assistance," which includes coordinating materials such as diapers and baby formula, JA 1105–09.[2] Each of these employees has different responsibilities and levels of interactions with Evergreen's clients. *Id.* The ultrasonographer, for example, has responsibilities

---

[2] The parties dispute whether all of Evergreen's five to seven employees "participate in promoting Evergreen's message." *Evergreen Ass'n, Inc. v. City of New York*, No. 20-CV-0580, 2025 WL 416903, at *2, n. 6 (E.D.N.Y. Feb. 6, 2025). On summary judgment, the District Court assumed for the purposes of the motion "that all employees act as Evergreen's 'messengers.'" *Id.* However, the District Court did not reach the merits of the case and therefore did not apply *CompassCare*'s two-factor test to Evergreen's expressive association claim.

limited to providing information about what a client is seeing on the ultrasound screen. JA 1090–1093. The employee responsible for "material assistance" does not have any "face-to face interaction" with Evergreen's clients. JA 1105–06.

On this record, Evergreen has not proven that each and every one of its five to seven employees with diverse roles and responsibilities "is client-facing" and that their position "involves expressly or implicitly speaking for the organization." *CompassCare*, 125 F.4th at 61. If Evergreen sought to fire the "material assistance" employee upon discovering she used birth control, it would fail to prove its claim under this prong of the test because that employee does not interact face-to-face with Evergreen's clients. Evergreen has also failed to prove that "the particular conduct or attribute" of each of its employees "is a threat to the employer's mission." *Id.* Because Evergreen is not litigating a "specific employment decision" that it has made in response one its employees' sexual or reproductive health decisions, such as firing that employee, it cannot prove that the employee's "particular conduct or attribute" threatens Evergreen's mission. There is no evidence in the record, for example, that Evergreen's organizational mission would be "threatened"

9

if the sonographer had an abortion or made another sexual or reproductive health decision counter to Evergreen's values. Her own sexual and reproductive health decisions would have no bearing on her ability to keep providing technical ultrasound information to clients.

In arguing that it is entitled to summary judgment on its expressive association claim, Evergreen relies largely on *Boy Scouts of America v. Dale,* which concerned a voluntary membership organization. *See* Appellant's Br. at 39–43. Such reliance is misplaced because this Court has explicitly rejected the idea that "employers enjoy precisely the same expressive-association rights as [] voluntary membership organizations." *CompassCare*, 125 F.4th at 59. An expressive association claim by an employer like Evergreen therefore "requires more." *Id.* at 61.

Another federal court applying *CompassCare* recently rejected an employer's expressive association claim in a challenge to a state antidiscrimination law where the employer sought "not a decision as to an individual hiring decision, but a blanket rule that it may discriminate based on religious belief as to every position." *Gen. Conf. of Seventh-Day Adventists v. Horton*, No. 24-CV-2866, 2025 WL 1703806, at *18 (D. Md. June 18, 2025). Therefore, it found the employer failed to provide "a basis

10

to conclude that the hiring of a non-member for every position would infringe on the right under either the *Boy Scouts* or *CompassCare* standards, which require consideration of how a group's ability to express particular viewpoints may be affected by the inclusion of certain individuals." *Id.*

Under *CompassCare*, Evergreen's expressive association claim must fail for several reasons. First, Evergreen is seeking a declaration that the Local Law is "unlawful" and "invalid" and an injunction prohibiting enforcement of the Local Law against Evergreen and "others." JA 72. This action does not concern one of Evergreen's specific employment decisions. *See* JA 53–73. *CompassCare* plainly prohibits this broad invocation of the right to expressive association in a pre-enforcement action seeking to facially invalidate an antidiscrimination law. *See* 125 F.4th at 61 (requiring assessment of a "specific employment decision"). Second, as *CompassCare* made clear, "just as a voluntary association cannot 'erect a shield against antidiscrimination laws simply by asserting that mere acceptance of a member from a particular group would impair its message,' nor can an employer." *Id.* (citing *Dale*, 530 U.S. at 653). That is exactly what Evergreen is impermissibly attempting

11

to do here on behalf of itself and "other[]" employers not before the Court. JA 72. Third, even if it were litigating specific employment decisions taken regarding its five to seven employees, on this record, Evergreen cannot prove that its expressive association rights would be violated in each and every circumstance.

For these reasons, if this Court reaches the merits, it should find that Evergreen has failed to prove that the Local Law burdens its right to expressive association.

## III. Employees Continue to Face Discrimination Based on Their Reproductive Health Decisions.

The New York City Local Law addresses many forms of discrimination that have hurt women in the workplace and continue to do so. *See* N.Y.C. Admin. Code § 8-107 (prohibiting employment discrimination and discriminatory harassment or violence based on an individual's "sexual and reproductive health decisions"). Employers have often exerted their influence over employees' private health care decisions through coercive means such as punishment, threats, or termination. Public reporting and detailed studies have elucidated these forms of discrimination. *See* Stephanie Bornstein, *Poor, Pregnant, And Fired: Caregiver Discrimination Against Low-Wage Workers*, Ctr. for

12

WorkLife Law, 11-13 (2011); Joan C. Williams, Professor of Law, Univ. of Cal. Hastings, and Director, Ctr. for Worklife Law, *Written Testimony at EEOC Meeting on Unlawful Discrimination Against Pregnant Workers and Workers with Caregiving Responsibilities* (Feb. 15, 2012); Deborah A. Widiss, *Intimate Liberties and Antidiscrimination Law*, 97 B.U. L. Rev. 2083 (2017). Culled from those studies—as well as from additional reports, investigations, and complaints—the stories below illustrate the types of harm that New York City acted to address, and the types of discrimination prohibited by the Local Law that have persisted in workplaces across the state and country in recent years.

For example, employees who became pregnant and decided to continue the pregnancy still risked being fired from their jobs, demoted, or relieved of key responsibilities. Leigh Castergine, a former top ticket sales executive for the New York Mets, was fired when the team's chief operating officer discovered that she had decided to continue a pregnancy outside of marriage. The COO stated that he was "as morally opposed to putting an ecigarette sign in my ballpark as I am to Leigh having this

13

baby without being married."[3] Kristina McGowan, a receptionist at a day spa on Long Island, told her supervisor she was pregnant one morning. By noon, the spa owner fired her, saying her pregnancy would make her "less agile" and more absent during busy summer months.[4]

Other employers, especially in low wage workplaces, have explicitly forced employees to decide between having an abortion or losing their jobs. For example, after disclosing she was pregnant, Abigail Shomo, a waitress, was told to either have an abortion or face termination. When she refused, the restaurant owner fired her and said that customers preferred to be served by a slim waitress, not someone with a "belly."[5]

By contrast, some employers punished employees who chose to end their pregnancy. Elena DeJesus, a teller at a credit union, asked her supervisor for one day off to have an abortion. Her supervisor approved the request, and Elena proceeded with her abortion. Two weeks later, the

---

[3] Richard Sandomir, *Ex-Mets Executive Sues Jeff Wilpon, Citing Discrimination over Pregnancy*, N.Y. Times (Sept. 10, 2014), https://www.nytimes.com/2014/09/11/sports/baseball/former-executive-sues-mets-and-wilpon-for-discrimination.html.

[4] Complaint, *McGowan v. Ananas Day Spa et al.*, No. 2:09-CV-00040, 2009 WL 3290324 (E.D.N.Y. Jan. 6, 2009).

[5] *Shomo v. Junior Corp.*, No. 7:11-CV-508, 2012 WL 2401978, at *1 (W.D. Va. June 1, 2012).

credit union's branch manager notified Elena that she was being terminated for her absence from work because the medical procedure "was not an appropriate excuse for her absence."[6]

Employers also subjected employees to adverse actions for pursuing pregnancy using assisted reproductive technologies like in vitro fertilization ("IVF") treatment. Cheryl Hall, a sales secretary, was fired in between her first and second round of IVF treatments. The employee relations manager listed "absenteeism—infertility treatments" as one of the factors relating to Cheryl's job performance. Cheryl's supervisor told her the termination "was in [her] best interest due to [her] health condition."[7]

The stories collected in the reports and studies cited above are only the tip of the iceberg. Many aspects of reproductive health care are stigmatized in the United States—from patients seeking abortions to people seeking treatment for infertility—and, as a result, instances of discrimination based on sexual and reproductive health decision-making are likely severely underreported.

---

[6] *DeJesus v. Fla. Cent. Credit Union*, No. 8:17-CV-2502-T-36TGW, 2018 WL 4931817, at *1 (M.D. Fla. Oct. 11, 2018).
[7] *Hall v. Nalco Co.*, 534 F.3d 644, 646 (7th Cir. 2008).

15

## CONCLUSION

For the reasons set forth above, *amici curiae* respectfully urge the Court to affirm the District Court's order granting summary judgment in Defendant-Appellee's favor. In the alternative, if this Court reaches the merits of Evergreen's expressive association claim, *amici* urge this Court to apply *CompassCare* and hold that Evergreen cannot prove that the Local Law burdens it right to expressive association.

Dated: August 18, 2025  
    New York, New York

Respectfully submitted,

New York Civil Liberties Union Foundation, by:

*/s/ Gabriella Larios*  
GABRIELLA LARIOS  
ELIZABETH GYORI  
ROBERT HODGSON  
MOLLY K. BIKLEN  
125 Broad Street, 19th Floor New York, NY 10004  
Phone: (212) 607-3300  
glarios@nyclu.org

American Civil Liberties Union Foundation, by:

LINDSEY KALEY  
125 Broad Street, 18th Floor  
New York, NY 10004  
Phone: (212) 519-7823  
lkaley@aclu.org

*Counsel for Amici Curiae*

16

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2025, this brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit through the Court's CM/ECF system. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Gabriella Larios*
Gabriella Larios

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(a)(5) and Local Rule 29.1(c) because, excluding the portions exempted by Fed. R. App. P. 32(f), this brief contains 2,779 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Gabriella Larios*
Gabriella Larios